UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIO E. MENDES,<br>　　Plaintiff<br><br>v.<br><br>BRIAN SWEET and<br>JOAQUIM MIRANDA,<br>　　Defendants | C.A. No. 05-11292 DPW |

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPORTING EXHIBITS OF THE DEFENDANTS SUBMITTED IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Joaquim Miranda submits this statement of facts with supporting attachments.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

For purposes of this summary judgment motion **only**, the defendant states the following:

1. On the evening of March 8, 2004, Mario Mendes was driving on Route 3 north on his way home to New Hampshire. **(First Amended Complaint ¶4.)**[1]

2. On the night in question, Joaquim Miranda, a State Police Trooper, was engaged in stationary traffic enforcement with radar on Route 3 North in

---

[1] The plaintiff's Answers to Interrogatories state the incident occurred on March 7, 2004. **(Plaintiff's Answers to defendant Brian Sweet's Interrogatories attached as Exhibit 1, Answer No. 7).** According to the police report, the incident occurred on March 7, 2004 **(State Police Report dated March 7, 2004 attached as Exhibit 2).**

1

Chelmsford, Massachusetts. **(Deposition of Joaquim Miranda attached as Exhibit 3 at p. 42).**

3. Trooper Miranda stopped Mr. Mendes for speeding. **(First Amended Complaint ¶4).** Trooper Miranda's radar gun recorded Mendes' speed as 83 miles per hour. **(Exhibit 3 at p. 44).** Mr. Mendes does not recall how fast he was going. **(Deposition of Mario Mendes attached as Exhibit 4 at p. 18).**

4. Mr. Mendes is Portuguese. **(Exhibit 4 at p. 5).** He understands English better than he speaks it. **(Exhibit 4 at p. 20).**

5. Trooper Miranda speaks only English and spoke to Mr. Mendes is English and Mr. Mendes seemed to understand him. **(Exhibit 3 at p. 55-57).**

6. After Mr. Mendes pulled his car into the breakdown lane, Trooper Miranda approached Mr. Mendes, told him he was speeding and asked for his license and registration. **(Exhibit 3 at pp. 48-49, Exhibit 4 at p. 18).**

7. Mr. Mendes obviously understood what Trooper Miranda asked of him as he handed his New Hampshire driver's license and registration to Trooper Miranda. **(Exhibit 3 at p. 49, Exhibit 4 at p. 18).**

8. Trooper Miranda radioed his dispatcher to check the license. **(Exhibit 3 at p. 50).** The dispatcher reported to Trooper Miranda that Mr. Mendes' New Hampshire license was valid but his right to operate in Massachusetts had been suspended due to a payment default. **(Exhibit 3 at p. 52).**

9. Trooper Miranda called for a tow truck because Mr. Mendes' right to drive in Massachusetts was reported to have been suspended. **(Exhibit 3 at p. 60).**

10. Mr. Mendes knew his car was going to be towed when he saw the tow truck. **(Exhibit 4 at p. 19).**

11.   Mr. Mendes was standing outside his car when Trooper Miranda returned to car and told him that he was driving with a suspended license, that he could not drive his car and it was going to be towed. **(Exhibit 3 at p. 54, Exhibit 4 at p. 19).**

12.   Mr. Mendes told Trooper Miranda in English that his license was not suspended and that he had a letter to prove it inside his car. **(Exhibit 4 at p. 19).**

13.   Trooper Miranda recalls that Mr. Miranda stated he was going home and then he pushed Trooper Miranda. **(Exhibit 3 at p. 66).** Mr. Mendes claims that as he walked toward his car to retrieve the letter, Trooper Miranda pushed him against his car. **(Exhibit 4 at p. 19, 64-65).** Trooper Miranda never kicked, punched or hit him with anything. **(Exhibit 4 at p. 26).**

14.   Trooper Miranda told Mr. Mendes he was under arrest and ordered him to put his hands behind his back so he could handcuff him. Mr. Miranda said he was leaving and a struggle ensued. **(Exhibit 3 at p. 66).**

15.   Trooper Miranda put the handcuffs on Mr. Mendes' right wrist. **(Exhibit 4 at p. 19).** Trooper Miranda told Mr. Mendes several times to put both hands behind his back so he could placed the handcuffs on his left wrist but Mr. Mendes refused and kept his left hand on his chest to protect his pacemaker. **(Exhibit 4 at pp. 19, 27-28, 70-71, 74-75).**

16.   Mr. Mendes admits he never told Trooper Miranda he had a pacemaker. **(Exhibit 4 at p. 81).**

17.   At some point Mr. Mendes and Trooper Miranda ended up on the ground, either in or near the far right hand travel lane of Route 3. **(Exhibit 3 at pp. 69-71, Exhibit 4 at pp. 66, 69).**

18.  Mr. Mendes continued to struggle with Trooper Miranda on the ground while Trooper Miranda attempted to put the handcuffs on his left wrist. Trooper Miranda tried pain compliance techniques and told Mr. Mendes numerous times to submit to the handcuffing or he would spray him with pepper spray. **(Exhibit 3 at pp. 71-73).**

19.  Mr. Mendes admitted that Trooper Miranda warned him he would use the pepper spray if he did not comply and sprayed him while he was refusing to take his left hand off his chest to be handcuffed. **(Exhibit 4 at pp. 27-28, 74-75, 82, 87-88).**

20.  The pepper spray had no effect as Mr. Mendes continued to struggle. **(Exhibit 3 at pp. 75, 78).**

21.  Trooper Miranda radioed for back up and then saw the tow truck driver and asked him for assistance. **(Exhibit 3 at pp. 80-81, Exhibit 4 at p. 23 and affidavit of Charles Glancy[2] attached as Exhibit 5).**

22.  Mr. Glancy observed Mr. Mendes struggling with Trooper Miranda and Mr. Mendes' refusal to be handcuffed. **(Exhibit 5).**

23.  Trooper Miranda and Mr. Glancy dragged Mr. Mendes off the roadway and near Mr. Mendes' car. **(Exhibit 3 at p. 86).**

24.  Trooper Hickey subsequently arrived and assisted in handcuffing Mr. Mendes. **(Exhibit 3 at pp. 86-87).**

25.  Trooper Miranda put Mendes in the back of his cruiser and called for an ambulance to "decontaminate" both men from the pepper spray and to treat both of them for the scrapes and bruises they received. **(Exhibit 3 at pp. 91-92,118).**

---

[2] Trooper Miranda and others may have referred to him as Mr. Clancy.

26. An ambulance arrived and treated Mr. Mendes. **(Exhibit 3 at p. 93)**.

27. Mr. Mendes had no visible injuries other than irritation to his eyes from the pepper spray. Mr. Mendes never reported any physical complaints including that he had a heart condition or a pacemaker to the EMTs who responded to the scene. **(See deposition of EMT Beth Corrigan attached as Exhibit 6 at pp. 9, 13-14, 17, 20, 24, 28 30-31, 37 and 46 and deposition of EMT Stephen Bradley attached as Exhibit 7 at pp. 10, 14, 17, 23-25, 29-30, 35-36, 43 and 48-49)**.

28. Mr. Mendes never told the EMTs that he had been abused or assaulted by the police. **(Exhibit 6 at pp. 37, 51 and Exhibit 7 at p. 38)**.

29. If Mr. Mendes had visible injuries or made complaints, he would have been transported to the hospital. **(Exhibit 6 at p. 23 and Exhibit 7 at p. 21)**.

30. Mr. Mendes agrees that he had an obligation to obey Trooper Miranda, but failed to do so. **(Exhibit 4 at pp. 93-94)**.

31. Mr. Mendes was charged with assault and battery on a police officer, resisting arrest, disorderly conduct, speeding, operating driving with a suspended license. **(Exhibit 2)**. He was convicted of resisting arrest and speeding. **(Exhibit 3 at p. 52)**.

32. Mr. Mendes admitted there was no actionable misconduct by Trooper Miranda or any other state troopers up to the point in time when he was placed in the police cruiser. **(See letter from plaintiff's counsel to Attorney General Thomas Reilly dated October 20, 2004, page 2, paragraph 4 attached as Exhibit 8)**.

Respectfully submitted,

The Defendants,
By their attorneys,

　/s/ Jeremy I.Silverfine
Jeremy I. Silverfine., BBO# 542779
Leonard H. Kesten, BBO# 542042
Pamela J. Fitzgerald, BBO#563130
**BRODY, HARDOON, PERKINS & KESTEN, LLP**
One Exeter Plaza, 12th Floor
Boston, MA  02116
(617) 880-7100

Dated:  August 28, 2006