UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO E. MENDES,<br>    Plaintiff,<br><br>v.<br><br>BRIAN SWEET and<br>JOAQUIM MIRANDA,<br>    Defendants. | C.A. No. 05-11292DPW |

PLAINTIFF'S PRE-TRIAL MEMORANDUM

1.  COUNSEL FOR THE PARTIES:

For Plaintiff (Mario E. Mendes):

Jose Couto Centeio, BBO #5544440
Alvin S. Nathanson, BBO # 367480
NATHANSON & GOLDBERG, PC
Two Oliver Street
Boston, MA 02109
617-210-4815

For Defendant (Brian Sweet):

Brian Rogal, BBO #424920
LAW OFFICES OF TIMOTHY M. BURKE
Needham Corporate Center
160 Gould Street, Suite 111
Needham, MA 02494
781-455-0707

For Defendant (Joaquim Miranda):

Jeremy I. Silverfine, BBO #542779
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
617-880-7100

2.    CASE WITH OR WITHOUT A JURY:

   The parties request a jury trial.


3.    SUMMARY OF EVIDENCE:

   The Plaintiff, Mario E. Mendes, will testify that he was born in Portugal on March 16, 1939. Mr. Mendes will testify that he is married to Vera Mendes and the couple has two adult children; Glauccy and Mario Mendes. On March 7, 2004, Mr. Mendes was 64 years old, weighed about 145 pounds, and is 5 feet and 2 inches tall. Mr. Mendes will testify that he did not attend any school in the United States of America and that he speaks and understand limited English. Mr. Mendes will testify that he wears a pacemaker and is dependent on said device.

   Mr. Mendes will testify that on the evening of March 7, 2004 he was leaving his son's house in Bedford, Massachusetts on his way home to Manchester, New Hampshire, when he was stopped on Route 3 North for allegedly speeding by the Defendant, State Trooper, Joaquim Miranda.

   Mr. Mendes will testify that both Trooper Miranda and he stopped in the breakdown lane. Mr. Mendes will testify that Trooper Miranda asked him for his license and registration which he gave the officer.

   Mr. Mendes will testify that Trooper Miranda went back to his cruiser, and stayed inside his cruiser until a tow truck arrived at the scene. Upon the tow truck's arrival, Trooper Miranda returned to Mr. Mendes' vehicle, and informed Mr. Mendes to step outside his vehicle, because his license to operate in Massachusetts was allegedly suspended. Mr. Mendes will testify that he told Trooper Miranda that his license was not suspended, and that he had a paper inside his vehicle to prove it. Mr. Mendes will testify that he carried in his vehicle a "Letter of Clearance" from the Massachusetts Registry of Motor Vehicles. Mr. Mendes will testify that he is not the person with a suspended license in Massachusetts, and the "Letter of Clearance" clearly states that he is not the same individual.

   Mr. Mendes will testify that Trooper Miranda did not allow him to retrieve the "letter of Clearance" from his vehicle and pushed him away from his vehicle. Mr. Mendes will testify that Trooper Miranda told him that he was under arrest, pulled his right hand back, and placed a handcuff on his right wrist. Mr. Mendes will testify that he placed his left hand on his chest to protect his pacemaker.

   Mr. Mendes will testify that Trooper Miranda, while struggling to place the handcuff on his left hand, pushed him on the ground. Mr. Mendes will testify that Trooper Miranda was all over him on the ground. Mr. Mendes will testify that while on the ground, Trooper Miranda used a pepper spray on him a couple of times. Mr.

Mendes will testify that while on the grounds, the tow truck driver along with Trooper Miranda grabbed his leg and dragged his body away from traffic.

Mr. Mendes will testify that while still on the ground another State Trooper arrived at the scene and placed a handcuff on his left hand. Mr. Mendes will testify that he was taken to the back seat of Trooper Miranda's cruiser. Mr. Mendes will testify that about six to eight law enforcement officers arrived at the scene.

Mr. Mendes will testify that an ambulance arrived at the scene, and provided Trooper Miranda and him with water and saline to wash their faces. Mr. Mendes will testify that the Emergency Medical Technicians did not provide any other medical care or assistance to either of them.

Mr. Mendes will testify that while seating in handcuffs in the back seat of Trooper Miranda's cruiser, Defendant, Trooper Brian Sweet, came to the cruiser and opened the back door at least three separate times and kicked him on his chest, right leg, and right knee. Mr. Mendes will testify that he asked Trooper Sweet to pick up his glasses that were on the ground, and Trooper Sweet broke his glasses with his foot. Trooper Sweet is Trooper Miranda's nephew.

Mr. Mendes will testify that he was breathing heavy, and felt like he was dying, suffered contusions, and abrasions on his face, hands, elbow, chest, leg and back, and that he had pain all over his body. Mr. Mendes will testify that Trooper Sweet struck and kicked him multiple times on March 7, 2004, and that Trooper Miranda failed to stop Trooper Sweet from kicking him and failed to provide him with reasonable medical care after his arrest.

Mr. Mendes will testify that he was taken to the State Police barrack, and charged with assault and battery on a police officer, resisting arrest, disorderly conduct, speeding, and operating with a suspended license. Mr. Mendes will testify that he was acquitted on all charges, except that he was found guilty on the charges of resisting arrest and speeding.

Mr. Mendes will testify that on the same night he was taken by his family to the emergency room at the Elliot Hospital. He was treated and discharged the same day. Mr. Mendes will testify that X-Ray showed that he suffered a scar on his right lung and a possible fracture on his rib. Mr. Mendes will testify that he followed up his medical care with his primary care physician and treated for about two months. Mr. Mendes will testify that he continues to experience pain on his right shoulder, body, and right arm, difficulties sleeping at night, and nightmares.

Mr. Mendes will testify that he incurred the following medical bills and expenses:

| | | |
|---|---|---|
| 1. | Elliot Hospital | $3,964.19; |
| 2. | Dartmouth-Hitchcock Clinic | $557.00; |
| 3. | Tow truck and glasses | $         ; |

    4.    Legal fees incurred in criminal case    $10,000.00

4. **STATEMENT OF FACTS:**

(a) **By Stipulation:**

1. Mario E. Mendes was born in Portugal on March 16, 1939.

2. Mr. Mendes is five (5) feet and two (2) inches tall, and weighed about 145 pounds at the time of his arrest on March 7, 2004.

3. Mr. Mendes is married to Vera L. Mendes, and the couple now resides in Florida.

4. On March 7, 2004, at around 9:30 at night Mr, Mendes was stopped for purportedly speeding by Trooper Joaquim Miranda, while traveling on Route 3 North.

5. Mr. Mendes had left his son's home in Bedford, Massachusetts, and was on his way home in Manchester, New Hampshire.

6. Mr. Mendes and Trooper Miranda stopped their motor vehicles on the breakdown lane.

7. Trooper Miranda asked Mr. Mendes for his license and registration, and Mr. Mendes gave both documents to Trooper Miranda.

9. Trooper Miranda returned to Mr. Mendes upon the arrival of a tow truck. Trooper Miranda told Mr. Mendes to exit his car, and that his license to operate in Massachusetts was suspended.

10. Mr. Mendes told Trooper Miranda that his license to operate in Massachusetts was not suspended, and that he had a letter inside his car to prove it. Mr. Mendes attempted to retrieve the "Letter of Clearance" from his automobile. Trooper Miranda pushed Mr. Mendes away from his car as he was attempting to retrieve the "Letter of Clearance" from his car.

11. Trooper Miranda told Mr. Mendes that he was under arrest, and pulled his right hand back and placed a handcuff on his right wrist. Mr. Miranda placed his left hand on his chest to protect his pacemaker.

12. Trooper Miranda and Mr. Mendes ended up on the ground.

13. Neither Trooper Miranda nor Mr. Mendes could recall how long they were on the ground.

14. Trooper Miranda used a pepper spray on Mr. Mendes a couple of times, but does not recall how many times.

16. Trooper Joseph Hickey arrived at the scene, and helped Trooper Miranda placed the handcuffs on Mr. Mendes left hand.

17. Mr. Mendes was placed in the back seat of Trooper Miranda's cruiser. At this point, there were several state and local police officers at the scene.

18. Emergency Medical Technicians Beth Corrigan and Stephen Brady arrived at the scene, and provided water and saline solutions to Mr. Mendes and Trooper Miranda for them to wash their eyes.

19. Trooper Miranda did not receive any other medical care at the scene or thereafter.

20. At some point in time, Defendant Trooper Brian Sweet arrived at the scene. Trooper Miranda told Trooper Sweet that he was alright.

21. Trooper Miranda noted on his police report that Mr. Mendes had scrapes and bumps on his face, elbows, and hands

22. Mr. Mendes was charged with assault and battery on a police officer, resisting arrest, disorderly conduct, speeding, operating with a suspended license. Mr. Mendes was acquitted on all charges, except that he was found guilty on the charges of resisting arrest and speeding.

23. Mr. Mendes was picked up at the State Police barrack by his Wife and daughter, and taken to the emergency room at Elliot Hospital.

24. Mr. Mendes was treated in the emergency room at the Elliot Hospital, and discharged the same day. X-Ray taken at the hospital showed that Mr. Mendes suffered a "scarring in the right lower lung" and the possibility of a "subtle fracture on his rib. Mr. Mendes received further treatment with his cardiologist.

25. Mr. Mendes speaks Portuguese, and very limited English.

26. Trooper Miranda speaks English, and no other language.

27. Trooper Sweet is Trooper Miranda's nephew.

28. Mr. Mendes told Trooper Miranda that he had heart problems.

(b)    By Admission:

1. Mr. Mendes is married to Vera Mendes.

2. Trooper Miranda noted in his police report that Mr. Mendes is five (5) feet and two (2) inches tall, and weighed about 145 pounds at the time of his arrest on March 7, 2004.

3. Trooper Miranda admits that Mr. Mendes is Portuguese, and speaks very limited English.

4. Trooper Miranda speaks English, and no other language.

5. Both Trooper Miranda and Mr. Mendes admit that the incident occurred on March 7, 2004, at around 9:30 P.M., at night, Mr. Mendes was stopped on Route 3 North by Trooper Joaquim Miranda.

6. Both Mr. Mendes and Trooper Miranda admit that they stopped their motor vehicles on the breakdown lane.

7. Trooper Miranda asked Mr. Mendes for his license and registration, and Mr. Mendes gave both documents to Trooper Miranda.

8. Trooper Miranda told Mr. Mendes to exit his car, and that his license to operate in Massachusetts was suspended.

9. Trooper Miranda told Mr. Mendes that he was under arrest, and pulled his right hand back and placed a handcuff on his right wrist.

10. Mr. Miranda placed his left hand on his chest to protect his pacemaker.

11. Trooper Miranda and Mr. Mendes ended up on the ground.

12. Neither Trooper Miranda nor Mr. Mendes could recall how long they were on the ground.

13. Trooper Miranda used a pepper spray on Mr. Mendes a couple of times, but does not recall how many times.

14. Trooper Joseph Hickey helped Trooper Miranda placed the handcuffs on Mr. Mendes left hand.

15. Trooper Miranda took Mr. Mendes and placed him on the back seat of his police cruiser.

16. Both Trooper Miranda and Mr. Mendes admit that the Emergency Medical Technicians Beth Corrigan and Stephen Brady arrived at the scene, and gave them water and saline solution to wash their face but did not provide any other treatment.

17. Trooper Miranda told Trooper Sweet that he was alright.

18. Trooper Miranda admits that he did not receive any medical care at the scene or thereafter.

19. Mr. Mendes was charged with assault and battery on a police officer, resisting arrest, disorderly conduct, speeding, operating with a suspended license.

20. Mr. Mendes was acquitted on all charges, except that he was found guilty on the charges of resisting arrest and speeding.

21. Mr. Mendes was picked up at the State Police barrack by his Wife and daughter, and taken to the emergency room at Elliot Hospital.

22. Trooper Miranda at some point learned that Mr. Mendes had a pacemaker.

23. Trooper Sweet is Trooper Miranda's nephew.

5. CONTESTED FACTS:

A. Mr. Mendes told Trooper Miranda that he had a pacemaker.

B. Trooper Miranda weighed at least twice more than Mr. Mendes did on March 7, 2004.

C. Mr. Mendes and Trooper Miranda did not understand each other because of the language barrier.

D. Neither Emergency Medical Technicians Beth Corrigan nor Stephen Brady was able to understand or to communicate with Mr. Mendes.

E. Trooper Miranda pushed Mr. Mendes away from his car when Mr. Mendes attempted to retrieve a letter from the Massachusetts Registry of Motor Vehicle.

F. Trooper Miranda pulled Mr. Mendes right hand back, and placed a handcuff on his right wrist.

    G.    Trooper Miranda pushed Mr. Mendes onto the ground.

    H.    Trooper Miranda saw Trooper Sweet opened the police cruiser and kicked Mr. Mendes a few times.

    I.    Mr. Mendes was breathing heavy and suffered cuts on his face, hands, chest, and leg, and bruises all over his body.

    J.    X-rays show that Mr. Mendes had a scar on his lung and a fractured rib.

    K.    Mr. Mendes received medical treatment for his injuries for about two months.

    L.    Mr. Mendes incurred medical costs in the amount of $4,521.19 and legal fees to defend the criminal charges in the amount of $10,000.00.

    M.    Trooper Sweet broke Mr. Mendes' glasses.

    N.    Mr. Mendes continues to experience pain on his right shoulder, body, and right arm, difficulties sleeping at night, and nightmares.

6.    **JURISDICTIONAL ISSUES:**

The Plaintiff does not anticipate any unusual legal issues at the time of trial. The Plaintiff expects the case to be governed by Federal Civil Rights Statute 42. U.S.C. §1983 and Massachusetts Civil Rights Statute M.G.L. c. 12, §11 and tort laws.

7.    **LEGAL ISSUES:**

If the Federal civil rights claim is dismissed, will the Court retain jurisdiction on the state claims?

8.    **AMENDMENT TO THE PLEADINGS:**

Paragraph 4 of the Amended Complaint should be changed to state "on the night of March 7, 2004 and not March 8, 2004.

9.    **ADDITIONAL MATTER TO AID IN THE DISPOSITOIN OF THE ACTION:**
None

10. **LENGTH OF TRIAL:**

   Five (5) days of jury trial.

11. **LISTS OF WITNESSES:**

   A.  Mario E. Mendes, (Plaintiff)
       1023 Gage Avenue
       Deltona, FL 32738

   B.  Vera L. Mendes, (Plaintiff's Wife)
       1023 Gage Avenue
       Deltona, FL 32738
       Wife will testify as to her observations of the Husband the night of the incident, complaints made by her Husband and her Husband's physical and emotional health after the incident.

   C.  Glauccy Mendes, (Plaintiff's Daughter)
       1023 Gage Avenue
       Deltona, FL 32738
       Daughter will testify as to her observations of father the night of the incident, complaints made by her father and her father's physical and emotional health after the incident.

   D.  Trooper Joaquim Miranda, Defendant

   E.  Trooper Brian Sweet, Defendant

   F.  Stephen Brady, EMT
       91 Black Oak Lane
       Dracut, MA
       EMT will testify as to observations made of Trooper Miranda and Mr. Mendes on the night of the incident, communication with the parties, medical assistance provided at the scene and Mr. Mendes' ability to speak and understand English.

   G.  Beth Corrigan, EMT
       2 Thurston Drive
       Hudson, New Hampshire
       EMT will testify as to observations made of Trooper Miranda and Mr. Mendes on the night of the incident, communication with the parties, medical assistance provided at the scene and Mr. Mendes' ability to speak and understand English.

Plaintiff reserves the right to call those witnesses listed by the Defendants, and further reserves the right to supplement the list of witnesses prior to or at the time of trial subject to the permission of the Court.

12. **DEPOSITION AND INTERROGATORY TO BE INTRODUCED AT TRIAL:**

The Plaintiff reserves the right to use the deposition and or interrogatory for rehabilitation and or impeachment purposes.

13. **SPECIAL INSTRUCTIONS FOR JURY TRIAL:**

   (a) **Request for Jury Instructions:**

   See Attached Plaintiff's Requests for Instructions to the Jury.

   (b) **Proposed Interrogatories or Special Verdict Forms:**

   See Attached Plaintiff's Proposed Special Verdict Questions to Jury.

   (c) **Proposed Questions for Voir Dire:**

   See Attached Plaintiff's Requested Voir Dire Questions.

14. **MOTIONS:**

The Plaintiff does not anticipate the filing of any motions in limine

Respectfully submitted,
Mario E. Mendes,
By his attorneys,

October 13, 2006

/s/ Jose Couto Centeio
Alvin S. Nathanson, BBO # 367480
Jose Couto Centeio, BBO #554440
Nathanson & Goldberg, PC
2 Oliver Street
Boston, MA 02109
(617) 210-4800